# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* WILLIAM A. THOMAS | : : : | CIVIL ACTION |
| v. | : : | |
| SIEMENS AG, *et al.* | : | NO. 09-4414 |

## MEMORANDUM OPINION

**Savage, J.** April 23, 2010

In moving to amend his complaint for the third time in this five-year old *qui tam* action, relator William A. Thomas ("Thomas") seeks to add numerous allegations regarding the relationship between the defendant Siemens AG, a German corporation, and the defendant Siemens Medical Solutions USA, Inc. ("SMS"), its United States subsidiary, which entered into the contracts with the government which are at issue in this False Claims Act case. He emphasizes that the amendments would add no new parties and no new claims or theories. Rather, he claims the proposed amendments are intended to provide more detail and evidence of the defendants' scheme to defraud the government garnered from the defendants' Rule 26 disclosures, and to remove "unessential" allegations regarding Siemens AG's criminality.

Opposing the motion, the defendants contend that Thomas inexplicably delayed the filing of his motion that is essentially based upon information that was publicly available years before the motion was filed, and amendment would place a burden on the court's case management and would prejudice them. They also argue that because the proposed third amended complaint fails to allege fraud with the particularity required by Rule 9(b) and

does not satisfy the *Twombly* pleading requirements,[1] it is deficient. Defendant Siemens AG, in particular, strenuously argues that the proposed amendment is futile because it fails to set forth sufficient facts to make out a claim against it on an agency theory.

**Background**

Thomas filed his original complaint under seal on September 2, 2004, in the District Court of the Virgin Islands, Civil Action No. 2004-116, naming Siemens AG and SMS as defendants. He filed his first amended complaint on August 18, 2006. After the government declined to intervene, the seal was lifted on January 23, 2008 and Thomas was ordered to serve the complaint. Thomas claims, without explanation, that he did not learn of the unsealing until October 2, 2008. On his motion, by order dated October 7, 2008, he was then permitted to amend his complaint and ordered to serve the defendants no later than February 2, 2009. He waited until January 29, 2009 to file his second amended complaint, which added Siemens Corporation as a defendant, more detailed allegations regarding his background, and information regarding the regulatory framework governing the case. He served Siemens Corporation and SMS, through their counsel, on February 2, 2009.

On January 26, 2009, just one week before the deadline to file and serve his amended complaint, Thomas requested additional time to serve Siemens AG through the Hague Convention, citing it as the exclusive means of serving Siemens AG. The following day, an order granting Thomas additional time to serve Siemens AG was entered.

Because Siemens AG is a German corporation, Thomas attempted to serve it

---

[1] These same arguments have been made in the defendants' motion to dismiss the second amended complaint. They are addressed in a separate memorandum opinion issued this date.

pursuant to the Hague Convention protocol.² However, because the exhibits attached to the complaint had not been translated into German, the attempted service was rejected. Siemens AG has raised improper service as a basis for dismissal.³

The action was transferred from the District Court of the Virgin Islands to this district on August 10, 2009. On October 21, 2009, a Rule 16 pretrial conference was held. Shortly after responding to the defendants' motions to dismiss the second amended complaint, Thomas filed his motion for leave to file a third amended complaint.

**Discussion**

Keeping in mind that the purpose of Rule 15 of the Federal Rules of Civil Procedure is to have a case decided on the merits rather than on a technicality, leave to amend a pleading should be freely granted "when justice so requires." *Shane v. Fauver,* 213 F.3d 113, 115-17 (3d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)); *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 886-87 (3d Cir. 1992). Factors considered are undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previously allowed amendments, undue prejudice to the opposing party, and futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1982).

In listing the relevant factors, some cases use the disjunctive, creating the impression that any one of the factors alone justifies denying amendment. *Cureton v. Nat'l*

---

² *Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (1969) ("Hague Convention"). The Hague Convention is a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988) (citations omitted). The objectives of the Conference were to "provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Id.*

³ Siemens AG's challenge to service is discussed in a separate memorandum opinion addressing the defendants' motions to dismiss the second amended complaint.

3

*Collegiate Athletic Ass'n*, 252 F.3d 267, 272-73 (3d Cir. 2001) (citing *Foman*, 371 U.S. at 182). However, delay alone will not preclude amendment. It must be coupled with a resultant burden on the court, prejudice to the other party or the plaintiff has previously amended. *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citing *Cureton*, 252 F.3d at 273). Prejudice to the non-moving party is the touchstone for the denial of an amendment, keeping in mind the goal of having cases decided on the merits. *Amquip Corp. v. Admiral Insurance Co.*, 231 F.R.D. 197, 199 (E.D. Pa. 2005). Thus, we must balance the prejudice to the non-moving party if the motion is granted against the harm to the movant if leave is not granted. *Id.*

The delay inquiry focuses on the movant's motive for not amending sooner, and the prejudice analysis concentrates on the effect on the non-moving party. *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

***Undue Delay***

To excuse his waiting until recently to seek a third amendment, Thomas argues that the information he wishes to add to his second amended complaint was first revealed in the defendants' Rule 26 disclosures, which he contends provided further details about the alleged scheme and the agency relationship between Siemens AG and the other two defendants.[4] Most of the information regarding Siemens AG and Siemens Corporation's corporate relationship and alleged control of their subsidiary was available to Thomas before he filed his original complaint and, at the latest, when he filed his second amended

---

[4] Specifically, the proposed allegations are intended to show that SMS acted with the actual or apparent authority of Siemens AG and/or Siemens Corporation when it defrauded the Veterans Administration ("VA") regarding the contracts at issue. *See* Proposed Third Amended Complaint, ¶¶ 49, 51, 55, 72, 74, 81, 84-85, 88.

complaint.[5] He does not explain why this information did not come to his attention until shortly before he filed this motion.[6]

Contrary to Thomas's implicit suggestion, the period of time during which the transfer motion was pending is no excuse for his delay in moving to amend. During that time, he was free to continue investigating his claim and the relationships among the defendants. The case was going to proceed in one forum or the other.

Thomas also points to the period of time between the unsealing of the complaint and his notification of the unsealing as an excuse for his delay. He claims that he first learned of the unsealing by "happenstance." Yet, he offers no explanation why he had not been notified of the court's action. More importantly, he makes no claim that the government, on whose behalf he is making the claim, did not know of the unsealing immediately. In fact, the docket reflects that the government was timely notified.

Thomas contends that he needs to amend his complaint "to address defects in service of process alleged by Siemens AG." But, his responses to the motions to dismiss and the new allegations in the proposed third amended complaint about SMS's alleged

---

[5] Proposed allegations based on information Thomas admittedly derived from previously available public sources include: that Siemens AG has implemented the global "Siemens One" initiative designed to "bundle the expertise" of its subsidiaries to drive cross-selling across its U.S. companies and grow its business in the federal government; that Siemens Corporation advertised that it is responsible for all U.S. legal and regulatory activities involving compliance for Siemens Companies; and that Siemens Corporation promoted cross-selling among various Siemens operating companies. *See* Transcript of Feb. 8, 2010 oral argument at 15; Proposed Third Amended Complaint, ¶¶ 6-12.

[6] The only new information produced in the defendants' Rule 26 disclosures that pertains to Siemens AG's relationship to or control over SMS consists of emails between SMS employees and Siemens AG employees, in which Siemens AG employees were involved in determining what technical documentation to supply as part of the user manuals for the medical equipment at issue, and brochures, DICOM conformance statements and "standard room layouts" authored by Siemens AG regarding the medical equipment, which SMS sent to the government during the contracting process. *See* Proposed Third Amended Complaint, ¶¶ 75-80. But, as explained in the futility section, *infra*, these newly produced documents are not adequate to support an agency theory of liability against Siemens AG or Siemens Corporation.

agency relationship to Siemens AG reveal that his proposed amendment is an attempt to avoid the consequences of his failure to effect service on Siemens AG.

Thomas requested his first extension of time to serve Siemens AG on October 3, 2008, when he asked the court for 120 days to file a second amended complaint and to serve it on all three defendants. Just seven days before the February 2, 2009 deadline, Thomas sought an additional 180 days, or until August 2, 2009, to serve the yet unfiled second amended complaint on Siemens AG pursuant to the requirements of the Hague Convention, citing the "lengthy" and "bureaucratic process of service" in Germany. He offered no excuse for not having attempted to serve Siemens AG four months earlier shortly after his first request for an extension of time was granted. Nor did he explain why he did not comply with the requirements of the Hague Convention.

After the District Court of the Virgin Islands allowed Thomas, on his motion, additional time to serve his amended complaint on the German defendant, he undertook to serve Siemens AG pursuant to the requirements of the Hague Convention. He attempted to serve Siemens AG with a copy of the amended complaint translated into German. He failed because the exhibits had not been translated into German.

Thomas never renewed his effort to serve Siemens AG through the Hague Convention protocol, nor did he request leave to do so. Instead, over nine months after the deadline for serving Siemens AG expired, Thomas wants to reload and pull the trigger on service. In other words, he wants to restart the service clock to overcome his failure to comply with the international requirements of the Hague Convention. To allow him to do so would prejudice Siemens AG and ignore treaty obligations.

After service pursuant to the Hague Convention failed, instead of requesting more

time to serve Siemens AG, Thomas took a position that he served the German defendant through an alternative method of service - one he had previously claimed was not available. He argued that Siemens Corporation and SMS should be deemed Siemens AG's agents for service of process purposes, making service on either Siemens Corporation or SMS service on Siemens AG. Thomas adds these allegations of agency to his proposed third amended complaint, but instead of admitting that he failed to plead the agency relationship in the earlier complaint, he requests to add these allegations under the guise of newly discovered evidence and "to address defects in service of process alleged by Siemens AG."

This action is over five years old, the seal was lifted over two years ago and the second amended complaint was filed over a year ago. Thomas has offered no acceptable excuse for the delay. Indeed, it is his dilatory conduct and failure to do what he had informed the court he would do to serve Siemens AG that resulted in the delay.

Because delay alone will not preclude amendment, we look to the prejudice to the defendants to determine if the amendment is allowed. We do so in the present context of the case. At the same time, we recognize that denying the amendment will not prevent Thomas from having his case decided on the merits. On the other hand, allowing it will give him another opportunity to serve Siemens AG at this late date, circumventing the Hague Convention requirements.

***Prejudice***

Prejudice to the party opposing the amendment justifies denying leave to amend. A party is unduly prejudiced if amendment would cause surprise, result in additional discovery, or add cost in preparing to defend against new facts or theories. *Cureton,* 252

F.3d at 273.  Consequently, we must ask whether the defendants will suffer any hardship if the amendment is allowed.  *Id*.

The defendants argue that they will be prejudiced by the proposed amendment because it will unfairly and unnecessarily increase the substantial costs they have already incurred as a result of Thomas's shifting allegations and legal theories.  In describing the shifting allegations, they contend that in the second amended complaint, Thomas set forth a fraudulent inducement theory under the FCA, alleging that SMS failed to comply with the "best price" obligations of the Federal Acquisition Regulation ("FAR"), and tried to link Siemens AG to the fraud by alleging its criminal history regarding unrelated matters.  Then, in his response to the defendants' motion to dismiss the second amended complaint, Thomas abandoned the FAR argument and claimed that the contracts at issue were Federal Supply contracts governed by the General Services Administration Acquisition Regulations ("GSAR").  In the proposed third amended complaint, Thomas shifted course again, by newly alleging that SMS was an agent of Siemens Corporation and Siemens AG, omitting any reference to Siemens AG's criminal history, omitting any reference to the GSAR, barely referencing the FAR, abandoning the "best price" obligations of the FAR, and impliedly conceding that the Discount and Pricing Information forms ("DPI") submitted to the VA requires SMS to have disclosed the best comparable discount as opposed to the largest discount ever given to any customer.  The defendants complain that they have incurred substantial costs in having to respond to each new set of facts and legal theories.

Thomas points out that because only limited discovery has taken place, no additional discovery will have to be done if an amendment is permitted.  He also disagrees with the defendants' characterization of his position as having conceded that the DPI

requires SMS to have disclosed the best comparable discount as opposed to the largest discount ever given to any customer.

Although Thomas contends that his proposed amendment contains no new claims or theories, he has added an agency theory of liability against Siemens Corporation and Siemens AG, and has frequently shifted his arguments with respect to the FAR. As a result, the defendants have had to address his inconsistent legal arguments at different times. However, defending against the new proposed facts and legal theories will not add substantial additional costs. Therefore, we find that although the defendants may suffer some prejudice if amendment is permitted, it will not be unduly burdensome.

*Futility*

Even in the absence of undue delay and prejudice, futility alone can be a reason to deny a motion to amend a complaint. Futility means that after amendment, the complaint would still fail to state a claim upon which relief could be granted. *In re Alpharma Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004) (quoting *In re Burlington Coat Factory*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Thus, leave to amend will be denied where the proffered amendments fail to cure the deficiencies in the earlier complaint. *Winer Family Trust v. Queen*, 503 F.3d 319, 331-34 (3d Cir. 2007).

The defendants argue that the amendment still does not satisfy the particularity requirement of Rule 9(b) applicable to fraud allegations. In responding to this argument, Thomas correctly points out that he is not required to allege all of the facts that are necessary to prove his case at trial. Nevertheless, he must allege sufficient facts, not vague generalities or legal conclusions.

Accepting Thomas's contention that his proposed third amended complaint does not

add new causes of actions or claims, we focus on the allegations relating to the relationship between Siemens Corporation and Siemens AG and their subsidiaries. Doing so, we conclude that these new allegations amount to no more than conclusory statements without any factual content.

Although it is true a plaintiff need not provide every factual detail and every specific fact with respect to the fraud, he must state with particularity each defendant's role or part in the fraudulent scheme. He must present enough facts to link each defendant to the fraud. Mere factual and legal relationships between defendants is not enough to impute knowledge of and actual participation in the fraud to a defendant. Otherwise, a plaintiff could implicate a defendant by asserting mere guilt by association.

***Claims Against Siemens Corporation***

In the proposed third amended complaint, Thomas advances an agency theory. He alleges that SMS "act[ed] with actual or apparent authority of Siemens AG and Siemens Corporation" when it engaged in fraudulent acts.[7] In support of his theory, the proposed third amended complaint avers the following facts: SMS put Siemens Corporation's taxpayer identification number on all of its VA solicitation responses; SMS's letters to the VA bear the Siemens logo; Siemens Corporation advertised that it is responsible for all U.S. legal and regulatory activities involving compliance for Siemens Companies; and Siemens Corporation promoted cross-selling among various Siemens operating companies.[8]

---

[7] *See* Proposed Third Amended Compl., ¶¶ 49, 51, 55, 72, 74, 81, 84-85, 88.

[8] *Id.*, ¶¶ 10-12, 75, 80.

These allegations are insufficient to support an agency liability theory against Siemens Corporation. "'[T]he three basic elements of agency are: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'" *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 385 n. 11 (3d Cir. 2004) (quoting *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000) (citing Restatement (Second) of Agency § 1, Comment b (1958))). To find a parent company liable under an agency theory, the subsidiary company must act on behalf of the parent *and* the plaintiff's claim of wrongdoing must arise out of that relationship. *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 198 (3d Cir. 2001) (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988)). In other words, the agency relationship must relate to the cause of action alleged in the complaint. *E.I. Dupont*, 269 F.3d at 199. The subsidiary must act for the parent in the specific transaction at issue. *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 2007 WL 2153278, at *2 (3d Cir. 2007) (citing *Phoenix Canada Oil*, 842 F.2d at 1477-78).

Thomas alleges that SMS was acting with the apparent or actual authority of Siemens Corporation, rendering Siemens Corporation liable as SMS's principal. Yet, he has not alleged sufficient facts to support an apparent authority theory. Absent are allegations that the VA reasonably believed that SMS acted with Siemens Corporation's authority to act as its agent because: (1) Siemens Corporation disclosed to the VA that SMS had authority to act on its behalf; (2) Siemens Corporation was a party to the contract; and (3) Siemens Corporation controlled SMS in the contracting process with the VA. *See*

*Jurimex*, 2007 WL 2153278, at *3 (citing Restatement (Third) of Agency § 3.03 (2006)).

Nor has Thomas alleged a basis for actual authority. He did not allege that Siemens Corporation manifested to SMS that it wanted SMS to act on its behalf, and that SMS reasonably believed that Siemens Corporation so authorized it. *Id.* at *2 (citing Restatement (Second) of Agency § 26 (1958); Restatement (Third) of Agency § 3.01). Thomas's conclusory allegations do not state that Siemens Corporation had a role in the submission of false statements to the VA. There are no factual allegations that SMS was acting on behalf of Siemens Corporation or that Siemens Corporation controlled the relationship, much less that any relationship SMS and Siemens Corporation had related to the claims in the third amended complaint. He merely makes conclusory statements about agency without a hint of a factual basis. Therefore, as alleged in his proposed third amended complaint, Thomas's claims against Siemens Corporation must fail.

### *Claims Against Siemens AG*

In the proposed third amended complaint, Thomas alleges that Siemens AG and Siemens AG's Medical Solutions operating group ("MED") manufactured the medical equipment at issue, and that SMS was acting as Siemens AG's sales agent in the United States and in its dealings with the United States government. The facts alleged to show agency are that in their contracting process with the VA, SMS sent letters signed by SMS employees bearing the "Siemens" logo and brochures, DICOM conformance statements and "standard room layouts" authored by Siemens AG regarding the medical equipment at issue, and Siemens AG employees were involved in determining what technical documentation to supply to the government as part of the user manuals for the medical equipment. None of these facts states or supports a theory that Siemens AG had any role

in the pricing of the equipment sold to the government or the preparation of the bids. Therefore, Thomas's claims against Siemens AG, as alleged in his proposed third amended complaint, would be futile.

## Conclusion

Thomas has failed to present a plausible excuse for his delay in seeking to amend his complaint a third time. Furthermore, because the proposed amended complaint would not state a claim against Siemens Corporation or Siemens AG, it would be futile. Therefore, the motion to amend will be denied.